LOTTINGER, Judge.
This is a workmen’s compensation proceeding wherein the plaintiff, Eddie Perkins, seeks to recover from his employer’s insurer, American Employers Insurance Company, compensation for total permanent disability.
The petition alleges that on or about October 4, 1948, plaintiff while unloading an iron kettle containing roofing tar, slipped and lost his balance, causing an injury to his back. It is alleged further that on the following day he was instructed by his employer, Mr. W. W. Mendow, owner of the Louisiana Sheet Metal Works, to report to Dr. Joseph J. Noto, who diagnosed the injury as a “severe sacro iliac lumbar strain.” Upon the doctor’s advice, plaintiff avers he remained away from work for six weeks, during which time he received regular treatments for his back, and for which period he was paid compensation in the sum of $110.00. At the end of this time, Dr. Noto instructed plaintiff to return to work to “work the soreness out”, and the plaintiff returned to his employment where he continued to work until on or about May IS, 1949. It is alleged that during this time plaintiff did not do the heavy work required of him previous to the accident, and that he was favored and aided by his fellow employees. It is alleged further that his back condition grew continually worse until on or about May 7, 1949, it became so severe as to prevent the performance of 'his job with any degree of accomplishment. He was laid off on May 15, 1949, and his release, it is alleged, was due to his having become totally and permanently disabled. The present action was instituted on March 20, 1950.
Counsel for defendant filed alternative pleas of one year preemption or prescription and of no cause or right of action. These were argued and then referred to the merits. The defendant then answered and after a full trial the trial judge in a written opinion sustained the pleas of preemption and prescription dismissing the suit, from which judgment the plaintiff has prosecuted this appeal.
The provisions of our Workmen’s Compensation Act relative to prescription are to be found in Section 31 of the Act (now LSA-RS 23:1209) which reads as follows: “In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall 'be forever barred unless the proceedings have been begun within two years. from-the date of the accident.”
The present suit was filed on March 20, 1950, more than one year after the date of the accident which is alleged to have occurred on October 4, 1948. It was neither alleged nor proven that an agreement was ever reached between the parties as to compensation or that any suit had been filed previous to the institution of the present action. The plaintiff, therefore, seeks to overcome the one year prescriptive period in two ways. First of all he alleges that although he returned to his employment he was not able to perform *464 and did not perform the strenuous duties required of him previously, and that the wages paid him were for lighter services and in lieu of compensation, thus making the prescriptive period commence on May 15, 1949, or the date of his discharge. Secondly, he in effect alleges that the injuries did not develop until on or about May 7, 1949, thereby causing the prescriptive period to commence as of that date.
Counsel for defendant maintain that these factual allegations are inconsistent, i. e., plaintiff could not have been disabled from November, 1948, until May, 1949, and paid wages for lighter work in lieu of compensation and, at the same time, not have suffered an injury which disabled him until May of 1949. While of the opinion that there is merit to defendant’s contention in this respect, we believe, as did the trial judge, that the matter should be determined in the light of the evidence rather than merely by the allegations of the petition itself.
Insofar as the first point is concerned we are of the opinion that plaintiff has utterly failed to show that the wages received by him subsequent to his return to work in November, 1948, were for lighter work and therefore in lieu of compensation. His own testimony, as well as that of the other witnesses, indicates that he was paid the same wages and performed the same duties. While his duties varied to some extent, the plaintiff’s principal job, both before and after the accident, was that of “firing the kettle”. His duties in this respect required that he attend to the kettle in which the tar or pitch was heated for application to the roofs under construction. He maintained the fire under the kettle, filled it with cold tar, heated it to the proper temperature and delivered it by means of a bucket attached to a rope to his fellow employees who applied it to the roof upon which they were working. The plaintiff himself testified that he never complained of pain to his foreman, though he did mention it to his fellow employees, and that he did the same work as he had previous to the accident only he didn’t work as hard. One of plaintiff’s fellow employees,, one Robert Lands, testified that he and others had helped plaintiff before his accident in October, 1948, and that plaintiff did his work just as well without any additional assistance after that time. In view of this testimony we think plaintiff has fallen far short of showing that the wages received by him from November, 1948, to May, 1949, were in lieu of compensation and that they should be considered as such. See Abshire v. Cities Service Refining Corporation, La.App., 50 So.2d 307.
The remaining point to be considered in connection with the pleas of prescription and preemption concerns the happening of another accident in May, 1949, or the actual development at that time of a disabling condition. The plaintiff testified that on the last day of his employment his back “gave way” when he was opening a drum of pitch and that he had to get assistance. This happened before noon and he continued to work the rest of the day until he was discharged that evening. The trial judge ruled that this evidence would not be considered as enlarging the pleadings and as allowing plaintiff to establish an accident which he had not alleged. Viewing this point in a light most favorable to the plaintiff, however, we do not believe that he proved either the occurrence of an accident or a development of disability in the month of May, 1949.
The record contains no evidence whatsoever, other than that of the plaintiff to the effect that his back “gave way”, that would substantiate the occurrence of an accident at that time. Further, the testimony of the plaintiff himself relative to his action taken by him subsequently indicates just the reverse. He made no complaint to his employer or the insurer until February, 1950. The testimony of Dr. Dowell, the physician called by plaintiff, does not reflect any report having been made to him by the plaintiff of any accident occurring in May, 1949. Further, the testimony of this doctor shows conclusively that there was no development in May of 1949 of a disabling condition. The X-Rays examined by him showed multiple areas of calcification in the anterior longitudinal ligament of the spine in the lumbar region *465 together with an irregularity of the fifth lumbar vertebra. These changes he thought were of long standing, and the irregularity probably the result of an old osteochrondritis, which usually occurs during adolescence. He also stated that though he could not tell whether these had been an aggravation of the arthritic condition as a result of a sprain, that any aggravation would have manifested itself immediately. Thus we conclude, as did the trial judge, that the plaintiff during the month May, 1949, did not suffer a delayed development of a disabling condition, as contended by counsel for plaintiff.
One word might be said here concerning the circumstances surrounding plaintiff’s discharge. The evidence shows that he was not released because of disability, as alleged, 'but because there was a lack of work. He and several other employees were discharged at the same time. Some of these were called back to work at a later date and plaintiff himself was requested to return, but refused.
The case of Manuel v. Travelers Insurance Company, La.App., 46 So.2d 319, relied on by counsel for plaintiff, is not applicable here. That case dealt with a situation involving an injury to the knee, followed by an operation and cure and later a sudden rupture of the bursae of the knee. Here, the record is replete with testimony to the effect that if any injury was caused it occurred in October of 1948, and was of a continuing nature. Much the same situation was present in Hannafin v. Pelican Cracker Manufacturing Company, Inc., La.App., 185 So. 479, 481, wherein it was said: “We are convinced that Mrs. Han-nafin suffered more or less from the time of her injury up to the time of the filing of her suit and is, perhaps, still suffering, but we are also convinced that whatever might have been the cause of her suffering it was due either to the fractured coccyx bone or the sacro-iliac strain, both of which injuries were manifest immediately after the accident. * * * Be that as it may, the section of the compensation law upon which the defense is based prohibits the bringing of a suit more than one year after the discovery of the disability due to the accident, in this case the sacro-iliac strain. Under the evidence in the record it •cannot be said that the sacro-iliac strain did not manifest itself until within one year before the suit was filed.”
Finding no manifest error on the part of the lower court, and for the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.