JANVIER, Judge.
This matter is before us on appeal by John P. Murray, plaintiff, from a judgment of the Civil District Court for the Parish of Orleans dismissing, on a plea of prescription of one year, his suit for workmen’s compensation in which he prayed for solidary judgment of $30 a week for 400 weeks against his employer, Alexander Shipyard, Inc., and its insurance carrier, Royal Indemnity Company.
On May 24, 1952, plaintiff, while operating a large metal turning lathe, sustained accidental injury and admittedly was totally disabled until September 29, 1952, on which day he returned to work for the same employer and, on advice of the medical expert, was assigned to work on a smaller metal turning lathe.
From the time of the accident, in May, until he again commenced work in September, he was paid maximum compensation, and after his return to work in September, he was paid at the same rate at which he had previously been employed. Until the trial of this suit and, in fact at the time of the argument before us, he remained at work on the smaller lathe and his rate of pay continued as great as it had been previously and he received all the increases in pay which similar employees received.
On January 24, 1955, which was two years and eight months after the occurrence of the accident, he filed this suit.
The defendants admitted the occurrence of the accident and in fact all of the essential allegations on which the suit is based, except that they denied that any disability remained after plaintiff returned to work on September 29, 1952, and, in addition to this denial of present disability, they filed pleas of prescription of one year and of two years.
It is on the plea of prescription of one year that the suit was dismissed in the District Court.
In a very clear statement in a case, which we shall discuss at some length, the Supreme Court has explained the meaning of the prescription provisions of our compen *691 sation laws. In Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, 525, appears the following:
“R.S. 23 :1209 provides for two periods of limitation. Initially, it prescribes a period of one year from the date of the accident within which suit must be brought. This prescription is interrupted by the making of compensation payments and it does not begin to run again until after the last compensation payment is made. The other limitation, which was provided by the amendatory Act 29 of 1934, is also a prescription of one year, coupled with a peremption of two years. It declares ‘Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.’ ”
In that case the Court was called upon to determine whether, under circumstances very 'similar to those found here, the pay which the employee had received after returning to work was actually earned and therefore should be looked upon as wages earned, or whether those payments had not been actually earned and therefore should be considered as mere gratuities given to the employee and received by him in lieu of compensation. The Court said that the money which had been paid to plaintiff under those circumstauces “was fully earned”. But the Court said that although no part of those wages could “be regarded as compensation or in lieu thereof * * * ”, nevertheless the one year prescription had not accrued for the reason that the disability did not manifest itself at the time of the accident, which had occurred on June 4, 1952, and had not become apparent until October 26, 1953, which was within one year of the time at which the suit had been filed.
There are a great many decisions in which the Supreme Court and the several courts of appeal, including this Court, have discussed the question of the effect on the accrual of prescription of the payment of wages to the same employee by the same employer after the occurrence of an accident, and this question has been recently discussed by Professor Wex S. Malone in the 1955 Pocket Part of his work entitled Louisiana Workmen’s Compensation Law and Practice, Chapter 19, section 402, page 88 of the said pocket part.
We think it unnecessary to quote from most of the numerous decisions touching on the subject but shall discuss what was said by the Supreme Court in the Wallace case, supra, and in Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218, 220, in which latter case the Supreme Court said that “the suit of an employee who is actually earning wages cannot be dismissed on a plea of prematurity because he is not receiving compensation.” The Court also said that “the wages paid * * * cannot be considered in the nature of compensation * * ”
In the case at bar there can be no question that the wages were fully earned by the employee. He himself so stated. We quote from his testimony:
“Q. Now, you have been earning your pay around there, haven’t you? A. I think so. I don’t think they would give it to me for nothing.
“The Court: Q. What counsel means is, you have been actually working. You are not a deadhead? A. No, sir. I’ve been working.
“Mr. Bienvenu: Q. And ever since you went back you have been working and earning your pay, is that correct? A. That is correct.
“Q. You don’t figure that Alexander Shipyard is giving you anything, do you ? A. No.”
*692 He further said:
“Q. And you figure you give a full hour’s work for an hour’s pay, is that right? A. Yes, sir.
“Q. And you give a full day’s work for a full day’s pay? A. Yes, sir.
"Q. And you figure at the end of the week when you get your pay check you have earned every nickel of it, is that right? A. That’s right.
“Q. And you don’t — they aren’t adding anything to your pay check because they like you, or feel sorry for you? A. No, they haven’t.
“Q. They pay you what you earn and not a nickel more and not a nickel less, isn’t that right? A. That’s right; that’s right.”
He was asked: “Since September 29th, 1952, you have worked as about as regular as anybody else on the job?” and he answered “Yes, approximately.”
And it appears that the work which plaintiff did after returnnig was very similar to that which he had done previously. On the smaller lathe he was able without manual or mechanical assistance to put the lighter material into the lathe and to remove it after it had been processed. Prior to the accident, in his work on the larger lathe the material to be processed was sometimes so heavy that he required assistance in placing it and in removing it. Except for this, the work on the smaller lathe was very similar to the work on the larger lathe.
Thus there can be no doubt that plaintiff fully earned the wages which have been paid him since he returned to work on September 29, 1952, and which he is still receiving. The result is that there has been no interruption in the tolling of prescription by the payment of anything which could be considered as compensation, “or in lieu thereof.”.
Counsel for plaintiff, however, maintain that prescription did not commence to run at the time of the accident for the reason that it was not known at that time what would be the ultimate condition of plaintiff and that, as a matter of fact, that ultimate condition is not yet known and was not known when, under date of February 3, 1954, Doctor Simon, the medical expert, finally discharged plaintiff, saying:
“We are discharging him not as cured but as having reached the maximum rehabilitation. The possibility of recurrence of an acute sciatic syndrome is still present.”
Counsel say that since plaintiff, even at that time, did not know the full extent of his disability, the prescription did not commence to run at least until that time.
Even if it be true that the extent of plaintiff’s disability was not known at the time of the accident, nevertheless, because of the two year prescription which is provided as a result of the amendatory act, Act 29 of 1934, LSA-R.S. 23:1209, his claim was barred because proceedings were not begun within two years from the date of the accident.
It is true that, as is shown in Wallace v. Remington Rand, Inc., supra, the prescription of one year does not commence to run until the extent of the injury has manifested itself and that therefore, if it be conceded that the extent of plaintiff’s injury did not manifest itself until the ultimate discharge by the medical expert in 1954, nevertheless the two year prescription which is provided in all cases commenced to run at the time of the accident and had fully accrued long before the suit was filed.
Counsel for plaintiff stoutly maintain that the two year prescription has no application to such a case as this, that it does not apply except where the injury does not “develop immediately after the accident.” We find ourselves unable to accept or, in fact, to understand this argument. It is in this identical type of case, where manifestation of the injury is delayed, that the two year prescription is applicable.
In Wallace v. Remington Rand, Inc., supra [229 La. 651, 86 So.2d 526], the Court, *693 referring to the necessity of some time limit within which all such litigation must be instituted, said:
“ * * * It is to be remembered that the statute does not countenance an unseasonable delay for filing compensation claims in any case as it provides a peremption of two years from the date of the accident within which all suits must be instituted.”
It necessarily follows that if the extent of the injury was known at the time of the accident the prescription of one year would bar this suit since the payment of earned wages did not interrupt the running of that prescription. It is equally true that if the extent of the injury did not manifest itself at once, the action would be barred by the prescription of two years for the reasons already set forth.
The principle which we think is applicable here is well stated in the reasons given by the District Judge and quoted by the Court of Appeal for the First Circuit in Abshire v. Cities Service Refining Corp., 50 So.2d 307, 308:
“ ‘The jurisprudence of this State has been established to the effect that if an injured employee continued to work for and to receive regular wages from the same employer after the injury is sustained, the prescription of one or two years, as provided by Section 31 of Act 20 of 1914, as amended, LSA-R.S. 23:1209, will begin to run from the date of the accident unless it is established that the payment of wages after the accident was in lieu of or in the nature of compensation and therefore had the legal effect of interrupting prescription. Thornton v. E. I. Du Pont De Nemours & Co., 207 La. 239, 21 So.2d 46; D’Antoni v. Employers’ Liability Assur. Corp., 213 La. 67, 34 So.2d 378; Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Arnold v. Solvay Process Co., 207 La. 8, 20 So.2d 407; Michel v. Maryland Casualty Co., La.App., 33 So.2d 144; Walker v. Mansfield Hardwood Lumber Co., La.App., 35 So.2d 610.’”
We deem it advisable to mention the fact that, in his reasons for judgment, the District Judge said that if he had not maintained the plea of prescription he would have had to render judgment in favor of plaintiff since he felt that “the evidence would justify * * * holding” that plaintiff “was totally and permanently disabled.”
This holding does not change our views on the subject but merely serves to accentuate the rather remarkable fact that in innumerable cases within the past years it has been held that an employee may return to work very similar to that which he had been doing before sustaining injury and may earn and receive full pay for that work and yet, as a result of interpretations of our workmen’s compensation laws, be held to be totally permanently disabled.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.